IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT J. PALMOSINA,<br><br>Plaintiff,<br><br>v.<br><br>THE CITY OF PITTSBURGH,<br><br>and<br><br>GUY COSTA, both his official capacity as the Director of Operations, and in his individual capacity,<br><br>and<br><br>WILLIAM PEDUTO, both in his official capacity as the Mayor of the City of Pittsburgh and in his individual capacity,<br><br>and<br><br>WILLIAM ACKLIN, both in his official capacity as the Chief of Staff within the Office of the Mayor of the City of Pittsburgh and in his individual capacity,<br><br>Defendants. | C.A. No.<br><br><br><br><br><br><br><br>JURY TRIAL DEMANDED |

## **COMPLAINT IN CIVIL ACTION**

### I.  Introduction

1.  This action is brought on behalf of the plaintiff contending that his long-term dedicated and unblemished employment within the City of Pittsburgh's Department of Public Works where he had been employed for over 30 years was terminated--not for any legitimate reason--but instead because he refused to support defendant Peduto in his quest for the Democratic Party Mayoral nomination.  This case stands for the

proposition that the--public interest--is not served when a--public servant--of unquestioned ability--is fired from a non-political job for reasons entirely political. Accordingly, this lawsuit seeks not only to vindicate plaintiff's rights protected under the First Amendment--made actionable against the defendants pursuant to the Civil Rights Act of 1871 as amended, 42 U.S.C. §1983--but to also send a clear message that firing career public servants for political reasons unrelated to job performance is unacceptable. Palmosina seeks a declaratory judgment that the defendants violated his civil rights, compensatory and/or punitive damages and such other equitable relief as is appropriate under the circumstances.

## II. Jurisdiction

2. The Court has direct jurisdiction to address the First Amendment claim under 28 U.S.C. §1343, a statute that grants federal courts the authority to decide cases and controversies rooted in alleged violations of the United States Constitution.

## III. Parties

3. The plaintiff, Robert Palmosina, is an adult resident of the City of Pittsburgh who at all times relevant hereto, was employed within the City of Pittsburgh's Department of Public Works.

4. Defendant City of Pittsburgh is a municipality located in the Western District of Pennsylvania.

5. Defendant Guy Costa is the Director of Operations within the City of Pittsburgh responsible for the day-to-day operations of the various departments operated within the City of Pittsburgh. At all times relevant hereto, this defendant was a

decision-maker and/or participated in, and/or acquiesced in the decision to terminate the plaintiff's employment in retaliation for protected First Amendment activity.

6. Defendant William Peduto is the Mayor of the City of Pittsburgh, the highest administrative official in the City's executive branch. At all times relevant hereto, this defendant was a decision-maker and/or participated in, and/or acquiesced in the decision to terminate the plaintiff's employment in retaliation for protected First Amendment activity.

7. William Acklin is the Chief of Staff within the office of the Mayor of the City of Pittsburgh. At all times relevant hereto, this defendant was a decision-maker and/or participated in, and/or acquiesced in the decision to terminate the plaintiff's employment in retaliation for protected First Amendment activity.

8. When engaging in the acts and omissions that culminated in the termination of the plaintiff's employment within the City of Pittsburgh's Department of Public Works, the defendants acted under color of state law within the meaning of Section 1983 of the Civil Rights Act.

**IV. The Facts**

9. The plaintiff was first employed by the defendant City of Pittsburgh in December, 1987 when he was hired as a laborer in the Pools Division.

10. Subsequent to his initial date of hire, plaintiff then worked as a laborer in the Parks Department, eventually promoted on merit in 1996 by then Mayor Murphy to the position of a Foreman at Schenley Park, in the Oakland section of the City of Pittsburgh.

11. In 2002, the plaintiff was promoted based on merit to the position of Supervisor, 5th division, within the City of Pittsburgh Department of Public Works. Plaintiff was recommended for this position by then Director of Public Works, Guy Costa.

12. In 2006, during the O'Connor administration plaintiff was promoted based on merit to the position of Acting Assistant Director for the Department of Public Works. Subsequently in the Ravenstahl administration plaintiff was appointed to that position on a permanent basis.

13. Plaintiff's last day of employment with the City of Pittsburgh in his position within the Public Works Department was on January 7, 2014 when he was informed that his employment had been terminated. No reason or explanation was given for this termination.

14. Throughout his 32-year career spanning positions from laborer to Assistant Director of the Public Works Department, plaintiff had an unblemished record, and regularly received high praise from supervisors, subordinates, and members of the community for his tireless and dedicated performance in the positions which he held.

15. In the last 3 positions held by the plaintiff, he was recommended on merit for those positions by defendant Costa.

16. During his employment with the City Pittsburgh, plaintiff regularly worked overtime hours for which he was entitled to "comp-time". Because taking time off for accrued "comp-time" may have interfered with his job performance, plaintiff regularly did not use that "comp time" or even vacation time and had over 1,000 hours of accrued

"comp-time" when his employment was terminated, totaling approximately $50,000.00 given back to the City.

17. None of the positions held by the plaintiff during his employment with the City of Pittsburgh required and/or were obtained--because of--or based upon--political affiliation and/or connection; instead, his selection for those positions was based upon merit.

18. At all times relevant, plaintiff served his community--in addition to his employment with the City of Pittsburgh--as a Democratic Committeeman and/or Ward Chairman, including such positions within the 20th and 28th Wards of the City of Pittsburgh.

19. In advance of the 2012-2013 Democratic Mayoral Primary for the Mayor of the City of Pittsburgh, plaintiff--in his position as a Ward Chairman--was requested by representatives of the Peduto campaign, including defendant Costa, if the plaintiff intended to support Peduto in his campaign for the Democratic Party nomination for Mayor of the City of Pittsburgh.

20. In an April 2013 meeting attended by representatives from the Peduto campaign, including defendant Costa and Representative Dan Deasy, plaintiff asked what would happen if he did not support Peduto's campaign, and was informed by defendant Costa that plaintiff needed to be "on the right side".

21. In the Democratic Mayoral Primary, the 20th and 28th Wards supported Democratic Party Mayoral candidate Jack Wagner and not Peduto.

22. After the election, defendant Costa informed plaintiff that the Peduto Administration was upset both that the 20th and 28th Wards supported Wagner and not

Peduto, and that plaintiff had not informed the Peduto campaign that such Wards intended to support Wagner.

23. The duties performed by the plaintiff as Assistant Director within the Department of Public Works, are now performed by two of plaintiff's former subordinates in alleged newly created so-called "Superintendent" positions, entitled "Street Maintenance Superintendent" and "Parks, Forestry and Heavy Equipment Superintendent". The combined salaries of these 2 positions are nearly twice the amount of the plaintiff's $77,000.00 annual salary.

24. The Street Maintenance Superintendent position was not announced, advertised, nor were applications accepted for the position.

25. The Parks, Forestry and Heavy Equipment Superintendent position was not announced, advertised, nor were applications accepted for the position.

26. Plaintiff was not considered for either of the "Superintendent" positions because of the referenced political reasons unrelated to the actual qualifications for such positions.

27. In correspondence dated January 8, 2014, plaintiff was notified by the defendant Acklin that his employment with the City of Pittsburgh was terminated effective January 7, 2014. Neither in the correspondence or in a related face-to-face conversation with defendant Acklin, was any reason given for the termination of the plaintiff's employment.

28. As a direct result of the defendants' conduct as hereinbefore described, plaintiff has suffered lost wages, benefits and other remuneration, loss of earning capacity, and a loss of front pay.

29. As a direct result of the defendants' conduct as hereinbefore described, plaintiff has suffered emotional distress, embarrassment, humiliation, and damage to his reputation.

30. As a direct result of the defendants' conduct as hereinbefore described, plaintiff has suffered a violation of his rights under the First Amendment to the United States Constitution as made actionable against these defendants pursuant to the Civil Rights Act of 1871, as amended, 42 U.S.C. §1983.

## V.  Relief

WHEREFORE, plaintiff requests judgment in his favor for both compensatory and/or punitive damages, as well as the award of costs and attorney's fees, and such other equitable relief as the Court deems appropriate and warranted under the circumstances, including appropriate injunctive and/or declaratory relief.

Respectfully submitted,

/s/ Timothy P. O'Brien
Timothy P. O'Brien, Esquire
PA I.D. #22104
1705 Allegheny Building
429 Forbes Avenue
Pittsburgh, PA 15219

Attorney for plaintiff